## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

O. L. WHITLOW, IN PERSON, AND AS EXECUTOR OF THE
ESTATE OF HELEN B. WHITLOW, DECEASED v.
MOUNTAIN TRUST BANK, ET AL.

August 28, 1974.

Record No. 730689.

Present, Snead, C.J., I'Anson, Carrico, Harrison,
Cochran and Harman, JJ.

*William B. Poff; Bentley Hite (Carr L. Kinder, Jr.; Woods, Rogers, Muse, Walker & Thornton,* on brief), for appellant.

*John C. Towler; James H. Fulghum, Jr.,* for appellees.

Snead, C.J., delivered the opinion of the court.

On June 15, 1970, Helen B. Whitlow and O. L. Whitlow, her husband, filed a bill of complaint to set aside a foreclosure sale of 348 acres of land located in Roanoke County. Named as defendants in the bill were: Mountain Trust Bank, the noteholder that initiated the sale, Holman Willis, Jr., and George H. Marshall, trustees under the deed of trust, and Rockydale Quarries Corporation, the purchaser at the sale.

The Whitlows alleged in the bill, among other things, that the sale was improperly advertised, was not fairly and regularly conducted, and produced a grossly inadequate price. They

further alleged that Rockydale Quarries, the purchaser, was a closely owned family corporation in which Willis, one of the trustees, was vice president and a stockholder. The Whitlows prayed that the sale be set aside and declared void, that they be permitted to pay the balance of $519.97 due the noteholder, and that they be granted further and general relief. The defendants timely filed separate answers to the bill.

While the litigation was pending, Helen Whitlow died testate devising all her real property to her husband. On his motion, the cause was revived in the name of the present complainant, "O. L. Whitlow, in person, and as Executor of the Estate of Helen Whitlow, deceased."

Thereafter, the court referred the cause to Allen W. Staples, a commissioner in chancery, with direction to make certain inquiries and to report thereon. In his report, the commissioner found, *inter alia*, that the value of the property was $50,000; that there were no grounds for setting aside the foreclosure sale; and that the bill of complaint should be dismissed at the cost of the complainant.

The complainant filed exceptions to the commissioner's report. The chancellor overruled the exceptions, ratified and confirmed the report, but found that the value of the property was between $40,000 and $45,000, rather than $50,000, the value fixed by the commissioner. A final decree dismissed the bill and struck it from the docket. We granted complainant an appeal.

The record shows that on July 21, 1941, Helen B. Whitlow acquired title to a 348 acre tract of land situated in Cave Springs Magisterial District, Roanoke County. On April 15, 1964, the Whitlows executed a deed of trust conveying the property to Holman Willis, Jr., and George H. Marshall, trustees, to secure payment of the Whitlows' note of even date in the sum of $1,553.83, payable to the order of Mountain Trust Bank in monthly installments. The deed of trust was inferior to the lien of a first deed of trust securing a debt of $16,850.00 to First Federal Savings and Loan Association of Roanoke.

The Whitlows made only sporadic payments on the note held by Mountain Trust Bank. They made their last payment on March 14, 1968, at which time $461.45 was due on principal.

On April 12, 1970, the bank requested the trustees to foreclose. Trustee Willis caused the property to be advertised in the Salem Times-Register for sale on May 1, 1970, at 11:00 a.m. on the front

steps of the Roanoke County Courthouse. As provided in the deed of trust, the advertisement was published once a week for three weeks.

Trustee Willis owned 13% of the stock and was vice president of Rockydale Quarries Corporation. He notified Eugene Puckett, an employee of the corporation, that "the property was coming up for sale." Also, on April 28, Willis wrote a letter to Mrs. Whitlow advising that unless the note was paid on or before April 30, "the Deed of Trust securing the same will be foreclosed." The letter, however, was incorrectly addressed and it was returned undelivered to the sender. The Whitlows did not know of the proposed sale before it took place.

The sale was held on May 1, 1970, as advertised. Those in attendance, besides Trustees Willis and Marshall, were Eugene Puckett, Thomas H. Beasley, a real estate investor, and several unidentified persons. The sale was conducted by Trustee Willis. Beasley, who had not been on the property, and Puckett, who represented Rockydale Quarries, were the only bidders. Rockydale Quarries offered the highest bid, $1500.00, and the property was sold to it, subject to the lien of the first deed of trust. Considering the balance of $14,068.14 due on the first deed of trust, the bid, in effect, was $15,568.14.

Various witnesses testified at the commissioner's hearing as to the fair market value of the property as of the date of sale. Willis, who owned property nearby, estimated the value of the subject tract to be between $20,000 and $25,000. Earl G. Robertson, a professional appraiser, fixed its value at $66,500, exclusive of timber thereon. Joy Whitlow, complainant's son, who bought and sold timber, valued the timber at approximately $15,000. Fred Bullington, a Roanoke real estate salesman, fixed the value of the property at $48,500. Both complainant Whitlow and his son, Joy, estimated the value to be between $125,000 and $150,000. However, the valuation for inheritance tax purposes was $40,000. As has been noted, the commissioner set the value at $50,000 and the chancellor fixed it at between $40,000 and $45,000.

Complainant contends that the relationship between Trustee Willis and the purchaser at the foreclosure sale, especially when viewed with the grossly inadequate price received for the property, demands that the transaction be set aside and declared void.

Because the trustee plays such a crucial role in a foreclosure sale, the controlling question is whether Trustee Willis acted properly with respect to the sale involved in this case. The general rule concerning the position of a trustee under a deed of trust is that the trustee is a fiduciary for both debtor and creditor and must act impartially between them. *Rohrer* v. *Strickland,* 116 Va. 755, 759, 82 S.E. 711, 712 (1914); *Linney* v. *Normoyle,* 145 Va. 589, 593, 134 S.E. 554, 555 (1926). Implicit in this rule is the proposition that a trustee must refrain from placing himself in a position where his personal interest conflicts with the interests of those for whom he acts as fiduciary.

Generally, a trustee cannot be both a seller and a buyer at his own auction sale, because the two roles are incompatible. *Smith* v. *Miller,* 98 Va. 535, 541, 37 S.E. 10, 12 (1900); *Harrison* v. *Manson,* 95 Va. 593, 598, 29 S.E. 420, 422 (1898); *See* 2 SCOTT, TRUSTS §§ 170, 170.1, 170.4 (3rd ed. 1967). When a trustee buys at his own sale, a constructive fraud exists; the transaction is voidable; and when attacked, the sale must be set aside. *Smith* v. *Miller, supra.* In such a situation, the adequacy of consideration, fairness of the sale, and good motive of the trustee in purchasing are not controlling. *Smith* v. *Miller, supra; Harrison* v. *Manson, supra.* A prime reason for making such a sale voidable is the necessity of upholding the fiduciary relationship between the trustee and those for whom he acts.

As a general rule, where a trustee purchases property indirectly at his own sale, such transaction is also voidable. When attacked and upon a proper showing, the sale must be set aside. *See Smith* v. *Haley,* 314 S.W.2d 909 (Mo. 1958); *Lee* v. *Lee,* 236 Miss. 260, 109 So.2d 870 (1959); and *Davis* v. *Doggett,* 212 N. C. 589, 194 S.E. 288 (1937).

*Southern Trust and Mortgage Co.* v. *Daniel,* 143 Texas 321, 184 S.W.2d 465 (1944), involved a trustee sale analogous to the sale in the case at bar. In the *Southern Trust* case, the trustee under a deed of trust sold property at auction to a corporation in which he was a substantial stockholder, a member of the board of directors, and an officer. He was also a business associate of the president of the corporation. The court set aside the sale and remanded the cause to adjust equities. In so doing, the court reasoned, in part, that "the opportunity for conflict between interest and duty is the vicious ingredient," because a trustee who is a stockholder and actively engaged in the management of a corporation owes a duty to it and wants to ensure the

corporation's success. He would be tempted to see the corporation make an advantageous purchase. *See also* 2 SCOTT, TRUSTS § 170.10 (3rd ed. 1967).

In the present case, Trustee Willis owned a substantial amount of stock of the closely owned family corporation which purchased the property. He was involved in the management of the corporation as vice president. He personally notified a representative of the corporation that the sale would be held. The sale was made to the corporation at a price advantageous to the purchaser. Under these circumstances, the sale constituted an indirect purchase by the trustee, and the transaction was, therefore, voidable.

■ The defendants contend, however, that even if the sale is voidable it should not be set aside because the complainant is barred from relief under the clean hands doctrine. They point out that, at the commissioner's hearing, complainant introduced two letters to show that Mrs. Whitlow had attempted, without success, to pay the debt in full before the foreclosure. The letters, allegedly written by Mountain Bank, stated that the bank no longer held the Whitlows' note and had purportedly returned checks sent the bank by Mrs. Whitlow in payment of the note. The commissioner and the chancellor found these letters to be forgeries. Suffice it to say, the evidence fully supports the conclusion that the documents were forged.

However, there was no showing or finding as to who forged the letters. And, more important, there was no showing that the complainant knew the letters were forged. His action in introducing the letters does not, therefore, override the trustee's conduct in indirectly purchasing the property at the foreclosure sale. To hold otherwise would reach an inequitable result. *Harrell* v. *Allen*, 183 Va. 722, 732, 33 S.E.2d 222, 226 (1945). Under the facts and circumstances of this case, the clean hands doctrine is not a bar to the relief sought by the complainant.

In view of what has been said, we hold that the trustees' foreclosure sale must be set aside. That being the case, it becomes unnecessary to discuss other issues raised in the assignments of error.

The decree appealed from will be reversed, the trustees' sale set aside, and the case remanded for the adjustment of equities, allowing complainant a reasonable time to pay all related obligations the court finds to be due by him. If the complainant

fails to comply with the terms of the decree to be entered, then the noteholder may direct the trustees to advertise the property for sale in accordance with the terms of the deed of trust.

*Reversed and remanded.*