## CIRCUIT COURT OF THE CITY OF RICHMOND

Sentry Insurance

    v.

United States
Fidelity and
Guaranty Co.

March 15, 2000

Case No. LF-2387-4

BY JUDGE RANDALL G. JOHNSON

This is an attempt by an excess liability insurance carrier, Sentry Insurance, to force the primary carrier, United States Fidelity and Guaranty Company (USF&G), to pay a larger share of a personal injury settlement. It is before the court on USF&G's demurrer. Under well-settled principles, on demurrer, the facts pleaded in the motion for judgment and all reasonable inferences from the facts pleaded will be taken as true. *See, e.g., Warner v. Clementson,* 254 Va. 356, 358, 492 S.E.2d 655 (1997); *CaterCorp, Inc. v. Catering Concepts, Inc.,* 246 Va. 22, 24, 431 S.E.2d 277 (1993).

On October 26, 1995, Anthony Wayne Scheffer, a pedestrian, was severely injured when he was struck by a car being driven by Patrick McKay Wade at a truck stop owned and operated by Welsh, Inc., in Wythe County. At the time of the collision, Wade was acting within the scope of his employment with Blue Beacon U.S.A., which operated a truck wash facility at the truck stop. Also at the time of the collision, Wade was covered under a liability policy issued to his mother by USF&G and which had a limit of $100,000. Wade was also covered under a liability policy issued by Sentry to his employer, Blue Beacon, and which had a limit of $1,000,000. The USF&G

policy provided primary coverage for the accident. The Sentry policy provided excess coverage.

Scheffer filed suit against Wade in the Circuit Court of Wythe County. USF&G offered the limits of its policy, $100,000, to settle. The offer was rejected, but the action was nonsuited. Scheffer filed a second lawsuit, this time against Wade, Blue Beacon, and Welsh and demanded $1,600,000 to settle. The demand included over $175,000 in medical bills. Although USF&G initially repeated its offer of the limits of its coverage, it later reduced its offer to $50,000, exactly one-half of its exposure. Still, the case was settled for over $800,000, with USF&G paying $50,000, Sentry paying $545,061.43, and Welsh's insurer paying the balance. Sentry now seeks to recover from USF&G the $50,000 which it argues should have been paid by USF&G.

Sentry's argument is clear, simple, and completely logical. According to the motion for judgment, which again must be taken as true, Wade was negligent. Scheffer's injuries were severe. Indeed, his medical expenses alone exceeded USF&G's coverage. Since USF&G was contractually obligated to pay damages up to $100,000, and, since Wade's damages were settled for over $800,000, Sentry argues that USF&G must be required to pay the other $50,000 of its coverage. It is Sentry's argument, in fact, that if USF&G is not made to pay its entire coverage in this case, it and other primary insurers will be encouraged to do exactly what USF&G did here; that is, withhold offering its coverage limits knowing that the excess carrier will have to offer more in order to protect the insured from an excess verdict and the excess carrier from a larger pay-out. While Sentry's argument is logical and seems like the only fair thing to do, the court must sustain USF&G's demurrer.

The motion for judgment is in two counts. Count I alleges a breach of contract. Count II alleges bad faith. Both counts rely on Sentry's being subrogated to the rights of its insureds, Wade and Blue Beacon. Neither count can survive.

With respect to Sentry's claim of bad faith, neither Sentry nor the court has been able to find any Virginia case that has upheld a claim of bad faith against an insurance company in the absence of a judgment against the insured. In fact, the gravamen of such a claim is that the insurer's failure to settle within its policy limits results in a judgment against the insured in excess of those limits. *See, e.g., Aetna v. Price*, 206 Va. 749, 761, 146 S.E.2d 220 (1966) ("The salutary purpose behind the rule, as displayed by the decided [non-Virginia] cases, prompts us readily to adopt the rule imposing liability upon an insurer *for an excess judgment* against the insured for failure to settle within the policy limits, in proper cases."); *Horace Mann Ins. Co. v. GEICO*, 231 Va. 426, 429, 344 S.E.2d 906 (1986) ("Bad faith may arise when

an insurer unjustifiably refuses to settle a claim within the insurer's coverage limits, *thereby exposing its insured to liability in excess of the policy limits*."); *Bettius & Sanderson v. Nat. Union Fire Ins.*, 839 F.2d 1009 (4th Cir. 1987) ("[I]f an insurer in bad faith refuses to settle a third-party claim within policy limits or otherwise in bad faith mishandles disposition of the claim, *and the claimant obtains a judgment in excess of the policy*, the insurer must pay the judgment."); *A & E Supply Co. v. Nationwide Mut. Fire Ins.*, 798 F.2d 669 (4th Cir. 1986) ("[A] liability insurer must answer for *a judgment in excess of the promised coverage* if the insurer has in bad faith refused to settle within the policy limits on a claim against its insured.") (Emphasis in each of the above quotes is added.) In none of those cases, or in any other case, has a bad faith claim been allowed to proceed where no excess judgment was obtained. No excess judgment was obtained here.

Sentry's breach of contract claim must also fail. In order to maintain a claim for breach of contract, a plaintiff must allege and prove (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff. *Brown v. Harms*, 251 Va. 301, 306, 467 S.E.2d 805 (1996); *Westminster Investing Corp. v. Lamps Unlimited*, 237 Va. 543, 546, 379 S.E.2d 316 (1989); *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257 (1969). As noted earlier, Sentry's claim against USF&G is based on Sentry's being subrogated to the rights of its insureds, Wade and Blue Beacon. Indeed, it must be, since there was no contract between Sentry and USF&G. The fact is, however, that neither Wade nor Blue Beacon was damaged at all by USF&G's failure to pay its full coverage. No judgment was entered against Wade or Blue Beacon, excess or otherwise, and neither Wade nor Blue Beacon was required to pay any money out of his or its pocket toward the settlement. Simply put, neither Wade nor Blue Beacon had a cause of action for breach of contract against USF&G at the time of Sentry's payment. And since a subrogee (Sentry) can have no rights greater than the rights of the person or entity from whom those rights were obtained (Wade and Blue Beacon), Sentry also has no cause of action for breach of contract against USF&G.

Finally, the court notes the Minnesota case cited by Sentry that allowed the type of claim Sentry seeks to pursue here. *Continental Cas. Co. v. Reserve Ins. Co.*, 238 N.W.2d 862 (Minn. 1976). It is the court's view, however, that it is up to the legislature and not the courts to allow such claims in Virginia.