**Antonio SANTOS, Plaintiff,**

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION et al., Defendants.**

**Case No. 12–61173–CIV.**

United States District Court, S.D. Florida.

Sept. 6, 2012.

---

Yechezkel Rodal, Loan Lawyers, LLC, Plantation, FL, for Plaintiff.

Edward W. Chang, Bank Rome, LLP, Philadelphia, PA, Brendan Albert Sweeney, Soto Law Group PA, Fort Lauderdale, FL, for Defendants.

### ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint [DE 5], filed June 18, 2012. The Court has carefully considered the Motion, Plaintiff's Response in Opposition [DE 11], filed July 5, 2012, Defendants' Reply [DE 12], filed July 16, 2012, arguments made at an oral hearing on August

3, 2012 [DE 19], and the notice of supplemental authority [DE 21], filed August 21, 2012, and is otherwise fully advised in the premises.

## BACKGROUND

Defendants the Federal National Mortgage Association ("Fannie Mae") and Bank of America, N.A. ("BANA") move to dismiss Plaintiff's complaint. Fannie Mae owns Plaintiff's mortgage and BANA services it. Plaintiff filed a claim alleging that the Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* He claims that the Defendants failed to adequately respond to Plaintiff's TILA request because they did not provide the telephone number of the owner of the mortgage obligation. TILA § 1641(f)(2) provides in pertinent part, "Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."

On June 28, 2011, Plaintiff's counsel sent BANA a "qualified written request" ("QWR") pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e). Plaintiff requested fifteen items, including information regarding the owner or master servicer of Plaintiff's obligation on his original mortgage note. BANA's response of July 15, 2011, identified Fannie Mae as the owner, but did not provide Fannie Mae's telephone number. [DE 1–2 at 11]. BANA also informed Plaintiff, "The concerns addressed in your correspondence require further detailed analysis. We will respond to your request after we have completed our investigation." *Id.*

Though not a part of Plaintiff's Complaint, the Defendants have also filed on the record two additional letters BANA sent Plaintiff. On September 26, 2011, more than two months after the initial response, BANA filed a supplemental response. The supplemental response identified the owner as Fannie Mae and gave BANA's Customer Service Department phone number. In answering Plaintiff's specific request for the name, address, and telephone number of the owner or master servicer of the obligation, [DE 1–2 at 10], BANA responded by giving Fannie Mae's name and address. The response continued, however, "The remainder of this request is respectfully declined as it seeks documentation and/or information beyond that which is available through a 'qualified written request' made under 12 U.S.C. § 2605." [DE 5–2 at 2 ¶ 6]. The only remaining portion of the request was the request for the phone number, which Plaintiff explicitly informed BANA it sought pursuant to TILA § 1641(f)(2). [DE 1–2 at 9].

Five months after the first supplemental response, BANA provided a second supplemental response on February 29, 2012. [DE 5–3]. That letter disclosed the telephone number for Fannie Mae and provided a new address.

## DISCUSSION

### A. Bad Faith Argument

The Defendants first ask the Court to dismiss this action because Plaintiff allegedly acted in bad faith by failing to attach the supplemental responses to his complaint, though he did include the initial response. The Defendants surmise that Plaintiff did not have good faith to actually obtain information, but rather just used the QWR as a vehicle to obtain attorneys' fees. Because of this bad faith, the Defendants ask the Court to dismiss the complaint.

The Court declines this invitation. Plaintiff acted within his statutory rights

by sending a QWR and by requesting information for which TILA mandates a response. Arguably, Plaintiff stated a claim as soon as BANA provided an incomplete response, indicating to this Court that the case was not filed without a basis in law. As to the incentives for Plaintiff's lawyer filing Plaintiff's claim, Congress has incentivized attorneys to file TILA claims, presumably for policy reasons Congress found desirable. The Court will not punish Plaintiff for taking advantage of an incentive that Congress provided.

### B. Timeliness and Adequacy of the Information Supplied

BANA then claims it complied with TILA through its series of responses, so Plaintiff fails to state a claim. Because TILA does not impose a statutory time period for responding to requests for information, the Defendants believe these three responses were timely.

■ The Court disagrees that Plaintiff failed to state a claim. First of all, the supplemental responses are not properly considered at the motion to dismiss stage. When considering a motion to dismiss, the Court takes the nonconclusory allegations of the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Typically, a court is confined to the four corners of the complaint. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir.2009). An exception exists for documents that were not attached to the complaint if they are central to a plaintiff's claim and their authenticity is undisputed. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes

of Rule 12(b)(6) dismissal...."). The supplemental responses are not central to Plaintiff's claim. They are central to the Defendants' defenses. Therefore, they are not properly considered.

Stripping these away, Plaintiff sent a request to BANA for the telephone number of the owner of his mortgage. BANA's response did not include the telephone number. This response failed to satisfy § 1642(f)(2)'s requirements. Therefore, Plaintiff sufficiently pled this element of his TILA claim.

Even if the Court were to consider the supplemental responses, they do not help the Defendants' case. "[A] violation of § 1641(f)(2) occurs, as some courts have sensibly concluded, either (i) after a 'reasonable time' has passed since the obligor sent a request without the servicer having sent any response, or (ii) when the servicer sends an inadequate response to that request." *Bradford v. HSBC Mortg. Corp.*, 829 F.Supp.2d 340, 352 (E.D.Va.2011). The first supplemental response boldly asserts a right to not respond to Plaintiff's request for the owner's phone number. This denial was in the face of Plaintiff's explicit warning that he made the request for the phone number under TILA. BANA's refusal to provide the phone number resulted in an inadequate response under TILA. Even in light of the supplemental responses, Plaintiff has sufficiently alleged that BANA denied his TILA request for the owner's phone number.

### C. Safe Harbor Provisions

■ Though BANA's initial and first supplemental responses may have been insufficient, the Defendants argue that they should be able to enjoy TILA's safe harbor provision because they eventually provided Plaintiff with Fannie Mae's phone number. Section 1640(b) allows a safe harbor if within sixty days after discovering an er-

ror in information provided, but before the commencement of a TILA action or the obligor's notice of the error, the creditor notifies the concerned party of the error. The Court finds that the safe harbor issue is not properly before the Court on this motion to dismiss, because it is an affirmative defense that is not apparent from the face of the Complaint and requires an analysis of facts that have not been set before the Court.[1] *See Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (noting that a complaint need not plead around affirmative defenses, so long as the affirmative defense is not apparent from the face of the complaint).

Having established a violation of TILA, the remaining question is whether Plaintiff has successfully alleged that the Defendants were liable under TILA.

*D. Servicer Liability*

Though Plaintiff has alleged that the Defendants failed to provide the phone number under TILA, Defendants assert that TILA only provides a private cause of action against creditors and their assignees. 15 U.S.C. §§ 1640(a), 1641(a). Therefore, courts in the Southern District of Florida have held that there is no TILA liability for servicers, unless they are or were the owner of the obligation. *Khan v. Bank of N.Y. Mellon*, 849 F.Supp.2d 1377, 1378–80 (S.D.Fla.2012); *Holcomb v. Fed. Home Loan Mortg. Corp.*, No. 10–81186, 2011 WL 5080324, at *6 (S.D.Fla. Oct. 26, 2011). BANA is a servicer, so it argues

that it cannot be liable for the TILA violation.

■ Though it is true that BANA is a servicer, Plaintiff has actually alleged that BANA previously owned the loan because BANA was the successor of the originator of the mortgage obligation. [DE 1–2 ¶¶ 7–8].[2] Because BANA previously owned the obligation, it can be liable for § 1641(f)(2) violations. *See* 15 U.S.C. § 1641(f)(1) (under the "liability of assignees" section, finding that a servicer can be liable for TILA violations if it "is or was the owner of the obligation"). Therefore, because Plaintiff has alleged that BANA was both a servicer and an owner of the mortgage obligation or creditor, it does face TILA liability. *See Khan*, 849 F.Supp.2d at 1382 n. 2 ("The Court notes that an entity that is both the servicer and lender on a loan would clearly be liable for damages. . . ."); *Patton v. Ocwen Loan Servicing, LLC*, No. 6:11–cv–445–Orl–19DAB, 2011 WL 1706889, at *6 (M.D.Fla. May 5, 2011) ("A loan servicer may be liable under TILA only if it currently owns or previously owned the mortgage note at issue.").

*E. Vicarious Liability*

■ Defendants next argue that Fannie Mae cannot be vicariously liable because a mortgage owner is not liable for a servicer's failure to comply with 15 U.S.C. § 1641(f). *See Holcomb*, 2011 WL 5080324, at *7. The Court rejects this argument, because as it has previously found, the owner of a mortgage is liable for its servicer's TILA violations. *Khan*,

---

1. The Court makes no ruling at this time as to whether the safe harbor provisions would even apply in this case. Courts have restricted the safe harbor to mathematical rather than informational errors. *See Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 250–51 (3d Cir.1980); *Galeano v. Fed. Home Loan Mortgage Corp.*, No. 12–61174, 2012 WL 3613890 (S.D.Fla. Aug. 21, 2012).

2. There is a factual dispute not properly before the Court on the motion to dismiss whether BANA actually was a successor to the original lender. Such issues may be brought again on a motion for summary judgment.

**1368**

849 F.Supp.2d at 1382. Other courts have agreed with this Court's position. *See Galeano*, No. 12–61174, 2012 WL 3613890 (S.D.Fla. Aug. 21, 2012) (collecting cases). Accordingly, Plaintiff has successfully alleged that Fannie Mae is liable for BANA's TILA violation.

*F.  Claim for Actual Damages*

TILA allows for actual damages. 15 U.S.C. § 1640(a)(1).  To obtain them, a plaintiff must show detrimental reliance. *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir.2001).  The plaintiff must allege facts to support actual damages. *Haun v. Don Mealy Imports, Inc.*, 285 F.Supp.2d 1297, 1303–04 (M.D.Fla.2003). Defendants claim that Plaintiff has not alleged any facts in support of actual damages.  The Court agrees, so Plaintiff's request for actual damages shall be dismissed, without prejudice to filing an amended complaint that adequately alleges actual damages.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss Plaintiff's Complaint [DE 5] is **GRANTED IN PART;**

2.  Inasmuch as Plaintiff seeks actual damages, that portion of Plaintiff's complaint is **DISMISSED** without prejudice to being amended to allege factual support for its claim of actual damages on or before September 12, 2012;

3.  All remaining portions of Plaintiff's Complaint may proceed.